IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW G. WYMAN,            )     CASE NO.:   1:09 CV 1851

          Plaintiff,           )     JUDGE DONALD C. NUGENT

     v.                     )

PARK VIEW FEDERAL SAVINGS    )     <u>MEMORANDUM OPINION</u>
BANK, et al.,                )     <u>AND ORDER</u>

          Defendants.        )

This matter is before the Court on Defendants' Motions for Summary Judgment. (ECF #

50, 51.) For the reasons set forth below, Defendants' Motions are GRANTED.

## I. BACKGROUND

On November 6, 2009, Plaintiff filed a one-count Amended Complaint against

Defendants Park View Federal Savings Bank ("PVF") and PVF Title Services, LLC ("PVF

Title"). (ECF # 11.) In the Complaint, Plaintiff alleges that PVF, a mortgage lender, "routinely

and habitually refers its borrowers to PVF Title for the purpose of obtaining settlement services

incident to the closing of federally related mortgage loans. . . ." (*Id.* at ¶ 40.) Plaintiff claims that

PVF's referral to PVF Title violates Section 8 of the Real Estate Settlement Practices Act

(RESPA), 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14, because PVF and PVF Title have an

affiliated business arrangement and fail to comply with all of the conditions set forth in 12

U.S.C. § 2607(c)(4) and HUD Regulation X at 24 C.F.R. § 3500.15. (*Id.* at ¶ 41.) Plaintiff

attempts to bring this action on behalf of himself and a putative class of individuals who: (a)

applied for a federally related mortgage loan from PVF, which loan was approved, funded and

settled in the ordinary course; (b) in connection with such loan was referred by PVF to PVF Title

for purposes of obtaining settlement services; (c) was required by PVF to use PVF Title for settlement services related to the loan; and (d) paid settlement service charges to PVF Title in connection with the loan settlement occurring within the applicable statute of limitations.  (*Id.* at ¶ 19.)

On October 27, 2009, Plaintiff filed a Motion for Partial Summary Judgment, requesting that this Court grant judgment in his favor "on the issue of 'required use' and defendants' failure to comply with the affiliated business arrangement exemption to liability under [S]ection 8(a) of the Real Estate Settlement Practices Act, 12 U.S.C. § 2607(a)."  (ECF # 10 at 1.)  The Court denied that motion, holding that Mr. Wyman had not satisfied his burden to show that he was entitled to a judgment in his favor on these issues.

Following the close of discovery, Defendants PVF, and PVF Title filed their own motions for summary judgment claiming that they are entitled to a judgment in their favor because they satisfied the requirements for the "safe harbor" exemption allowing payments to affiliated business arrangements under RESPA.  (ECF #50, 51).  Plaintiff filed Briefs in Opposition to the Summary Judgment Motions (ECF #52, 53), and Defendant PVF filed a reply. (ECF #54).  The Motions have been briefed fully and are now ripe for consideration.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of

-2-

> informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id.* at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

-3-

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

*of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that there is a genuine
> issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as

an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for

summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred

with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by

the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d

222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181

(9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made
> on the basis of personal knowledge, set forth admissible evidence, and show that the
> affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn
> or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay
> evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may

be considered by the district court unless the opposing party affirmatively raises the issue of the

defect.

If a party fails to object before the district court to the affidavits or evidentiary

> materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. It is with this standard in mind that the instant Motion must be decided.

### III. DISCUSSION

At issue in this case is an alleged violation of Section 8(a) of RESPA, which prohibits the award of kickbacks or fees for the referral of a settlement service involving a federally related mortgage loan. RESPA, § 8(a); 12 U.S.C. § 2607(a). More specifically, Section 8(a) provides that:

> no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident

> to or a part of a real estate settlement service involving a federally related mortgage
> loan shall be referred to any person.

*See id.* There is a limited exception to this rule, however, that applies to "affiliated business

arrangements," in which an entity that is in a position to refer business either owns part of or is

affiliated with a settlement service provider. RESPA, § 8(c)(4); 12 U.S.C. § 2607(c)(4).

> RESPA defines affiliated business arrangements as:

> an arrangement in which (A) a person who is in a position to refer business incident
> to or a part of a real estate settlement service involving a federally related mortgage
> loan, or an associate of such person, has either an affiliate relationship with or a
> direct or beneficial ownership interest of more than 1 percent in a provider of
> settlement services; and (B) either of such persons directly or indirectly refers such
> business to that provider or affirmatively influences the selection of that provider.

12 U.S.C. § 2602(7).

RESPA further provides that the referral of an affiliated business is not prohibited if (1) a

disclosure is made of the existence of the affiliated business relationship to the person referred

and such person is provided with a written estimate of the charge or range of charges generally

made by the provider to which the person is referred; (2) such person is not required to use any

particular provider of settlement services; and (3) the only thing of value that is received form the

arrangement is a return on the ownership interest or franchise relationship. *See* 12 U.S.C. §

2607(c)(4). Finally, the provider of settlement services must be a "bona fide provider" of such

services. *See* HUD Statement of Policy 1996-2, Regarding Sham Controlled Business

Arrangements, 61 Fed. Reg. 29258 (June 7, 1996).

The parties do not dispute that PVF and PVF Title are "affiliates," that the affiliated

business arrangement was disclosed to Mr. Wyman. They also do not dispute that he was

-6-

provided with a written estimate of the charge or range of charges generally made by PVF Title, or  that the only thing of value received from the arrangement was a return on the ownership interest or franchise relationship.  Further, Plaintiff does not argue that PVF Title was not a "bona fide provider" of title services.  Thus, the only question in dispute is whether Mr. Wyman was required to use this particular provider of settlement services.

Plaintiff argues that PVF required him to use PVF Title for settlement services, in violation of 12 U.S.C. § 2607(c)(4)(B).  Defendants claim that Mr. Wyman was not required to use PVF Title, and that hundreds of other customers in the same situation, in fact, opted for other settlement providers.  "Required use" is defined, in pertinent part, as "a situation in which a person must use a particular provider of settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service."  24 C.F.R. § 3500.2.

Defendants have presented evidence that the ABA disclosure statement provided to Mr. Wyman explicitly stated:

> You are **NOT** required to use the listed provider as a condition for settlement of your loan on the subject property. **There are frequently other settlement services providers available with similar services. You are free to shop around to determine that you are receiving the best services and the best rates for these services.**
>
>       * * *
>
> While we encourage you to use this company, you are not required to do so as a condition for the purchase, sale or refinance of your home.
>
>       * * *
>
> * Park View Federal Savings Bank may not condition an extension of credit on either:
>
>      o     Your purchase of an insurance product from Park View Federal Savings Bank or any of its affiliates;

-7-

or

○   Your agreement not to obtain, or a prohibition on you from obtaining, an
     insurance product from an entity not affiliated with Park View Federal
     Savings Bank

* The insurance may be purchased from an insurer or agent of your choice, subject only
to Park View Federal Savings Bank's right to reject a given insurer or agent base on
reasonable standards, uniformly applied, and your choice of an insurer or agent will not
affect Park View Federal Savings Bank's credit decision or credit terms in any way.

(*See*, ECF #50-2)(emphasis in the original).  This language was printed in regular-sized font, and

relevant portions were bolded for emphasis, as set forth above.  Mr. Wyman signed the ABA

disclosure form containing this language on January 15, 2009.  He does not dispute that he

received and signed this disclosure statement.  There is no evidence that he did not understand

his rights as set forth in the disclosure, or that he was confused, or misled in anyway as to his

right to select his own title insurance provider.

Plaintiff argues that the disclosure is irrelevant because PVF included title insurance in

the required use section of its Good Faith Estimate.  The Good Faith Estimate prefaces the

required use section with the statement: "THIS SECTION IS TO BE COMPLETED ONLY IF A

PARTICULAR PROVIDER OF SERVICES IS REQUIRED.  Listed below are providers of

services which we require you to use." (Pl. Decl. Ex. 1).  The Good Faith Estimate did not name

PVF Title, rather, it states that "[a] provider will be chosen from [PVF's] 'title company list.'"

(#ECF 52-1).

Mr. Wyman and his wife did not attend their scheduled deposition, and have submitted no

evidence indicating that they were not fully aware that they had the option of choosing a

settlement company if they so desired.  Even Mr. Wyman's declaration, attached as an exhibit to

the Plaintiff's Brief in Opposition, does not state that he thought he was required to use PVF

-8-

Title for the settlement services connected to his loan.   The affidavit of Anne Johnson, Senior

Vice President of Branch Administration & Support Services of PVF, attests that PVF did not

require Mr. Wyman, or any other customer, to use PVF as a condition of obtaining a loan from

Park View Federal. (ECF #50-1).  She further attests that in the year Mr. Wyman refinanced his

home (2009), borrowers opted to use different title service providers 16% of the time (490 out of

3143 closings), and that each of these customers received the same documents as Mr. Wyman

did. (ECF #50-1).  Ms. Johnson attests that any approved title company that Mr. Wyman would

have requested, would have been approved, and that because he did not make any such request

prior to closing, PVF utilized a HUD-1 form identifying PVF Title as the title insurance company

for his closing, as they had indicated they would do in the ABA disclosure.  (ECF # 50-1; 50-2).

   Plaintiff misconstrues PVF's arguments, contending that PVF's stance is that "once the

[ABA Disclosure] is provided, a borrower can never prove required use."  This is not PVF's

position in this action.  PVF simply asks the Court to take into account the ABA disclosure and

treat it as evidence that customers were not required to use PVF Title.  It in no way expects the

Court to ignore any contrary evidence.  The problem for Plaintiff is that he has submitted no

contrary evidence.  Thus, this case is distinguishable from the cases cited by Plaintiff in support

of his position, where the courts denied summary judgment because the Plaintiffs in those cases

had provided evidence that the lenders at issue did not act in accordance with the representations

made in their ABA Disclosures..

   Mr. Wyman's entire case relies solely on a statement in the Good Faith Estimate that "[a]

provider will be chosen from [PVF's] 'title company list.'"  Even taken in the light most

favorable to the Plaintiff, this does not constitute evidence that any particular provider (including

PVF Title) was a required provider of title insurance for this transaction.   At best, this statement could be read as a requirement that title insurance be provided by some company on PVF's company list.   This, however, is not "a situation in which a person must use a **particula**r provider of settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or in part, to the settlement service," (emphasis added), and, therefore, does not meet the definition of "required use"as set forth in  24 C.F.R. § 3500.2 .

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions for Summary Judgment are GRANTED.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: November 23, 2010

-10-